## AFFIDAVIT FOR CRIMINAL COMPLAINT

## INTRODUCTION AND AGENT BACKGROUND

1.      I, Jeffrey M. Brock, am employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) as a Special Agent, and have been since May 2016.  That I have served previously with the Lenexa, Kansas Police Department for five (5) years where I had experience in general investigation with narcotics and violent crimes.  I am a graduate of Missouri Western State University with a Bachelor's Degree in criminal justice and a minor in psychology.  I am also a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and Special Agent Basic Training at the ATF National Academy, Glynco, Georgia. During my law enforcement career, I have conducted and participated in numerous firearms investigations surrounding the illegal possession, use, purchase, and sales of firearms.  I have also participated in numerous investigations involving the unlawful distribution of narcotics in violation of federal and state laws, which led to arrests, convictions of violators, and seizures of narcotics and proceeds gained from illegal activity.  In the course of my duties, I have conducted or participated in physical and electronic surveillance, undercover transactions, the execution of search warrants, debriefing of informants, interviews of witnesses, reviews of tape-recorded conversations involving drug trafficking activities, and analysis of telephone toll records and other records kept by or relating to drug traffickers and firearms dealers.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause in support of the complaint and does not set forth all of my knowledge about this matter.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(a)(1)(A), 922(d)(1), 924(h), 371, 924(a)(1)(A) and 922(a)(6) have been committed, are being committed, and will continue to be committed by James Samuels in the Western District of Missouri.

## PROBABLE CAUSE

4. On January 5, 2018, ATF Industry Operations Intelligence Specialist (IOIS) Nicolas Boggs informed ATF Task Force Officer (TFO) Kimberly Anderson that Co-Conspirator #1 was the subject of a previous straw purchasing of firearms case and had reported several firearms stolen in Kansas City, Missouri. The following firearms were reported stolen by Co-Conspirator #1:

a. On July 7, 2014, a Jimenez, Model J.A. Nine, 9mm, pistol, Serial Number 284356, was purchased by Co-Conspirator #1 at Conceal & Carry. The firearm was reported stolen by Co-Conspirator #1 on July 23, 2014 (16 days after purchase) during a reported armed robbery in Kansas City, Missouri (KCPD Case Number 14-51616). The firearm was recovered during a search warrant served in Chicago, Illinois, where crack cocaine and marijuana were seized (Chicago Case Number HY216153). The time to the crime was two hundred seventy-nine (279) days. Through further investigation, it was discovered that James Samuels (B/M, DOB: 10/15/1965) initially purchased the firearm on November 22, 2013, from Jimenez Arms, Inc., for $120.00 and had the firearm shipped to Conceal & Carry Federal Firearm License (FFL), 12004 East 47th Street Kansas City, Missouri. The firearm was subsequently transferred to Co-Conspirator #1 through Conceal & Carry.

b. On July 21, 2014, Co-Conspirator #1 purchased a Jimenez, Model J.A. 380, .380 caliber, pistol, Serial Number 285794, at Conceal & Carry. Co-Conspirator #1 then reported the firearm stolen on July 23, 2014 (two days after purchase) during a reported armed robbery in Kansas City, Missouri (KCPD Case Number 14-51616). The firearm was recovered in possession of Noel Zavala (H/M, DOB: 02/19/1994), who was a felon, on September 5, 2014 (KCPD Case Number 14-63701). Zavala was convicted in the United States District Court for the Western District of Missouri, Case No. 14-00251-01-CR-W-HFS, for a violation of 18 U.S.C. § 922(g)(l) (Felon in Possession of a Firearm), for possession of the firearm sold by Samuels to Co-Conspirator #1. The time to the crime was forty-six (46) days. Through further investigation, it was discovered that Samuels initially

2

purchased the firearm on November 13, 2013, from Footholls Firearms, LLC, via GunBroker.com for $100.00 and had the firearm shipped to Conceal & Carry. The firearm was subsequently transferred to Co-Conspirator #1 through Conceal & Carry.

c.     On August 6, 2014, Co-Conspirator #1 purchased a Jimenez, Model L.C. 380, .380 caliber, pistol, S/N 264092 at Conceal & Carry. Two (2) Jimenez firearms were reported stolen by Co-Conspirator #1 with unknown serial numbers on December 19, 2014, during a reported burglary with forced entry (KCPD Case Number 14-90910). This report was filed one hundred thirty-five (135) days after this firearm was purchased by Co-Conspirator #1. Through further investigation, it was discovered that Samuels initially purchased the firearm on November 22, 2013, from Jimenez Arms, Inc., for $120.00 and had the firearm shipped to Conceal & Carry. The firearm was subsequently transferred to Co-Conspirator #1 through Conceal & Carry.

d.     On November 02, 2014, Co-Conspirator #1 purchased a Jimenez, Model L.C. 380, .380 caliber, pistol, Serial Number 264659, at Conceal & Carry. Two (2) Jimenez firearms were reported stolen by Co-Conspirator #1 with unknown serial numbers on December 19, 2014, during a reported burglary with forced entry (KCPD Case Number is 14-90910), which was filed forty-seven (47) days after this firearm was purchased. Through further investigation, it was discovered that Samuels initially purchased the firearm on December 10, 2013, from Jimenez Arms, Inc., for $120.00 and had the firearm shipped to Conceal & Carry. The firearm was transferred to Co-Conspirator #1 through Conceal & Carry.

e.     On November 14, 2015, a Jimenez, Model J.A. Nine, 9mm, pistol, Serial Number 098813 was transferred to Samuels at CR Sales (FFL), 1703 South Noland Road, Independence, Missouri. CR Sales reported that they received the firearm from a FFL called Firearms Sales Service. Samuels then transferred the firearm to Co-Conspirator #1 at Green Tip Arms, LLC (FFL), 203 South Pelham Path Raymore, Missouri, on February 01, 2016.

f.     On April 7, 2016, Samuels purchased a Jimenez, Model J.A. 380, .380 caliber, pistol, Serial Number 361229, along with multiple other firearms at Green Tip Arms. The firearm was recovered in a homicide investigation on July 05, 2016 (KCPD Case Number 16-47993). It was determined the recovered firearm was the firearm used to murder the victim. The suspect arrested was a juvenile who resided with Co-Conspirator #1. The time to the crime was eighty-nine (89) days. It was reported that the juvenile was Co-Conspirator #1's godson and stole her firearm to commit the homicide.

g.     On April 7, 2016, Samuels purchased a Jimenez, Model J.A. 380, .380 caliber, pistol, Serial Number 361232 along with multiple other firearms at Green Tip Arms. On March 27, 2017, Co-Conspirator #1 reported a lost backpack on the 27th Street bus line in Kansas City, Missouri (KCPD Case

3

Number 17-21776) (Reported three hundred fifty-four (354) days after purchase.) The firearm was recovered in a vehicle, which contained four (4) adults and one (1) juvenile, a total of three (3) firearms, crack cocaine and $775.00 on March 31, 2017 (KCPD Case Number 17-22923). The time between the firearm being reported stolen and recovery was four (4) days and the time to crime was three hundred fifty-eight (358) days.

h.     On October 27, 2016, Samuels purchased a Jimenez, Model L.C. 380, .380 caliber, pistol, Serial Number 264089 from Security Solutions via GunBroker.com for $125.00. On November 2, 2016, the firearm was received by CR Sales. On May 1, 2017, Samuels transferred the firearm to Co-Conspirator #1 at Mission Ready Gunworks (FFL) (North Kansas City, Missouri). On June 11, 2017, Co-Conspirator #1 reported the firearm stolen in KCPD Case Number 17-50673 (Reported forty-one (41) days after transfer.) On July 8, 2017, Co-Conspirator #1 reported the firearm stolen again, KCPD Case Number 17-60215.

5.     After reviewing this above firearm theft reports and purchases, ATF traced the firearms. The firearm traces revealed that Samuels was the original purchaser of many of the firearms, indicating Samuels was buying and selling firearms. On January 16, 2018, TFO Anderson and I contacted CR Sales, 1703 S. Noland Road, Independence, Missouri. TFO Anderson and I explained to an employee of CR Sales, why we were there. When I requested information on Samuels, the employee stated that he thought we would be in asking about him at some point. The employee recalled that Samuels was a Kansas City, Missouri fireman. The employee stated that Samuels bought and transferred many Jimenez pistols. The employee stated that he told Samuels he was acting as a firearms dealer without a license. The employee stated he told Samuels that he was playing with fire and was going to get burned. It should be noted that ATF IOIS Nicolas Boggs conducted a search of Federal Firearms Licensees and found that Samuels is not a Federal Firearm Licensee. The employee remembered Samuels well and stated that he would bring in people and a firearm then request them to complete an ATF Form 4473 and a NICS check to transfer the firearm to the third party.

6.    The employee of CR Sales assisted TFO Anderson and I by running a Customer Profile Report on Samuels. The report consisted of all the sales Samuels was involved in at CR Sales from 2015 to January 2017. This included if Samuels brought in a firearm and asked CR Sales to transfer it to a third party. The report showed that from June 1, 2015 to November 2, 2016, Samuels had six (6) firearms transferred to him at CR Sales, two (2) of which were transferred out to a third party on an ATF Form 4473. Samuels transferred an additional eight (8) firearms to third parties on ATF Form 4473 that he acquired from other FFLs. Of the six (6) firearms Samuels acquired at CR Sales, four (4) were transferred to third parties at three (3) different FFLs.

7.    While reviewing the reports completed by ATF SA William Lee in November of 2015, where he interviewed Witness #1, former roommate of Co-Conspirator #1, I learned that Witness #1 believed Co-Conspirator #1 was being used to buy firearms for a person Witness #1 knew as KCFD James. SA Lee was unable to positively identify the person Witness #1 knew as KCFD James. After learning that James Samuels was the original purchaser on the firearms Co-Conspirator #1 was having stolen/recovered, I utilized open source databases to include Facebook to assist in identifying Samuels. I was able to locate photographs of Samuels on Facebook while he was in his Kansas City, Missouri Fire Department uniform during what appeared to by a promotion or awards ceremony. ATF TFO Anderson created a photo line-up containing one (1) photograph of Samuels and five (5) similar looking individuals. On February 12, 2018, TFO Anderson and I contacted and interviewed Witness #1 at her residence, 5247 Brookwood Avenue, Kansas City, Missouri. Witness #1 explained that she lived with Co-Conspirator #1 from approximately September of 2014 to March or April of 2015. During that time, Witness #1 believed Co-Conspirator #1 purchased six (6) or more firearms for KCFD James. Witness #1 stated

that she would recognize KCFD James if she was shown a photo lineup. Witness #1 was shown the photo lineup prepared by TFO Anderson. Within a very short period of time, Witness #1 pointed to photo number four (4) stating that it was KCFD James. Witness #1 stated that she was positive it was KCFD James and that she doesn't forget faces. The photo labeled number four (4), the one Witness #1 pointed to, was in fact James Samuels.

8.      On February 12, 2018, I contacted an employee with Security Solutions (FFL) via phone. The employee advised that he sold Samuels three (3) Jimenez pistols. The employee explained that the firearms were posted on GunBroker.com and Samuels inquired about purchasing them. The employee stated that he and Samuels agreed on a price so the employee took the firearms off GunBroker.com and sold them to Samuels. The employee explained that Samuels requested him to ship the firearms to CR Sales. The employee provided me with email correspondence between him and Samuels. Samuels used jamsam65@yahoo.com as his email.

9.      On February 12, 2018, I spoke with an employee with 1st Last Only (FFL) via phone. The employee explained that Samuels purchased a Jimenez, Model JA380, .380 pistol for $79.99 on June 28, 2015. The employee stated that the sale was completed via GunBroker.com. The firearm was shipped to CR Sales. The employee provided me with a copy of the receipt for the firearm, a credit receipt, Samuels' user name on Gunbroker.com (jamsam65), and reviews that sellers left on his account. With the reviews that other sellers left on GunBroker.com, I was able to locate additional FFLs that Samuels purchased firearms from and where those firearms were shipped.

10.     On February 14, 2018, I contacted JG Firearms Instruction (FFL) via phone. I learned that Samuels purchased two (2) Jimenez pistols on April 13, 2017, via GunBroker.com. The firearms were shipped to Mission Ready Gunworks, 1924 Linn Street, Kansas City, Missouri.

11.     On February 14, 2018, I spoke with an employee with Simmons Sporting Goods (FFL) via phone. The employee advised that Samuels purchased a Mossberg 715T .22 LR rifle from them via GunBroker.com on January 2, 2017, for $197.00. The employee provided me with a receipt for the firearm, a copy of the hand written invoice, a copy of the FFL licensee the firearm was shipped to and a copy of the shipping label. The firearm was shipped to Mission Ready Gunworks.

12.     On February 14, 2018, I contacted an employee with Mission Ready Gunworks. I advised the employee that I was looking at obtaining information about his dealings with Samuels. The employee stated that he remembered Samuels and remembered that he was a firefighter. The employee stated that Samuels came into his shop a lot last year dealing with mostly cheaper pistols and a couple of cheaper revolvers. The employee stated that Samuels would have firearms shipped to Mission Ready Gunworks by other FFLs and ask him to transfer the firearms to Samuels or other people Samuels brought in. Sometimes Samuels would bring in a firearm and a third party to transfer the firearm. The employee provided me with the FFLs that shipped firearms in for Samuels and the ATF Forms 4473 for the firearms transferred to Samuels and the ATF Forms 4473 for the firearms Samuels transferred to third parties.

13.     Samuels had a total of sixteen (16) firearms transferred to him from January 7, 2017 to November 21, 2017. Samuels transferred three (3) of those sixteen (16) firearms to a third party on ATF Form 4473 at Mission Ready Gunworks. Samuels transferred another three (3) firearms purchased through other FFLs to third parties at Mission Ready Gunworks.

14.     On February 14, 2018, I spoke with an employee with RT Arms via phone. The employee stated that he recalled selling a Taurus Judge 4510 revolver to Samuels via GunBroker.com for $369.99. The employee shipped the firearm to Green Tip Arms in Raytown, Missouri. The employee provided me with screen shots of emails with Samuels.

15.     On February 16, 2018, I contacted an employee with Fisher Firearms via phone. The employee explained that Samuels purchased a total of ten (10) firearms from him, all via GunBroker.com. Samuels purchased two (2) Jimenez JA380 pistols; a SCCY CPX-2 pistol; a Jimenez J.A. NINE; and an Armscor M206 revolver for a total of $825.00 on May 19, 2017. Samuels purchased a Jimenez JA 22, a Jimenez JA380, an Armscor M200, an Armscor M206, and a SCCY CPX-2 for a total of $891.00 on June 6, 2017. The employee stated that all the firearms were shipped to Mission Ready Gunworks. The employee provided me with a copy of the two invoices.

16.     On February 27, 2018, I contacted an employee from Black Market Arms via phone. The employee advised that Samuels purchased three Jimenez JA380 pistols on April 7, 2017 for $99.00 each. The employee advised that Samuels contacted Black Market Arms via GunBroker.com but the sale was actually completed via email. The firearms were shipped to Mission Ready Gunworks. The employee provided me with copies of the emails and receipts with Samuels.

17.     On April 3, 2018, I received a letter and disc from GunBroker.com in response to a subpoena. The disc contained a Microsoft Access document that contained information about the bids Samuels made, the orders Samuels completed and the dealers in which he purchased firearms from. Upon review, I learned of an additional firearm Samuels purchased that was not yet known. Samuels purchased a Jimenez J.A. 380, .380 caliber pistol, Serial Number 233196,

from La Familia Pawn and Jewelry (FFL), Orlando, Florida, via GunBroker.com on November 27, 2015. Samuels purchased the firearm for $79.99. The firearm was shipped to CR Sales. When the firearm was received by CR Sales, it was sold to a third party on December 4, 2015. On April 6, 2018, I contacted La Familia Pawn and Jewelry who provided receipts and shipping information on the purchase. On April 6, 2018, I contacted J. & G. Firearms Instruction (FFL), Tarpon Springs, Florida, and learned that Samuels purchased two Jimenez J.A. Nine, 9mm pistol, Serial Numbers 397980 and 398050, for $138.99 each. J. & G. Firearms Instruction provided me with a receipt of the purchase.

18.     On April 18, 2018, I was contacted by an employee with Mission Ready Gunworks. The employee explained that Samuels had a Mossberg TAC 22 .22 LR rifle bearing Serial Number, EKF3243869, transferred to him on April 14, 2018. The employee explained that Samuels was having a FEDARM/Berika FR-98 12-gauge shotgun bearing Serial Number, B18MF0135, shipped to Mission Ready Gunworks from ST Auction (FFL) out of Fort Smith, Arkansas.

19.     On April 26, 2018, I was contacted by the employee at Mission Ready Gunworks who explained that Samuels' Berika FR-98 12-gauge shotgun had arrived. Later that day Samuels had the firearm transferred to him and paid cash for the transfer fee. The employee provided me with photographs of the ATF Form 4473.

20.     On June 5, 2018, IOIS Boggs learned that Samuels purchased two (2) firearms from Academy Sports, 510 E. Markey Parkway Belton, Missouri, on June 4, 2018. Samuels purchased a CBC/Braztech L. C. RS 22 .22LR rifle bearing Serial Number 7CA007382L, and a Taurus/Taurus International Manufacturing Inc., PTl 11 G2 9mm Luger pistol bearing Serial Number TKX62130.

21.     On June 6, 2018, IOIS Boggs discovered Samuels had purchased three (3) firearms from Academy Sports in the past. The first firearm was a Taurus Judge .45 Long Colt/410 gauge revolver bearing Serial Number IN990114, from Academy Sports, 510 E. Markey Parkway Belton, Missouri, purchased on June 11, 2015. The second firearm was a Windham Weaponry WW-CF .223 caliber/5.56 mm rifle bearing Serial Number CF018389, from Academy Sports, 14405 West 135th Street, Olathe, Kansas, purchased on December 18, 2015. The third firearm was a Heritage Manufacturing Inc. Rough Rider .22 caliber revolver bearing Serial Number T50199, from Academy Sports, 510 E. Markey Parkway Belton, Missouri, purchased on February 1, 2017.

22.     On June 6, 2018, I was contacted by the employee at Mission Ready Gunworks who advised that Samuels went into the shop and had a Century Arms CANIK TP9SA 9mm pistol bearing Serial Number 18AP00946, transferred to him.

23.     On June 7, 2018, TFO Nicholas Sola, TFO John Mattivi and I contacted Blue Steel Gun and Ammo. An employee at Blue Steel Gun and Ammo assisted investigators by providing the acquisition and disposition books for the business. Investigators discovered that Blue Steel acquired four (4) firearms from Samuels and transferred them to third parties. The employee explained that she remembers Samuels coming in to transfer firearms to other individuals. The employee explained that Samuels purchased five (5) Jimenez pistols directly thru Jimenez Arms and had them shipped to the store to be sold to buyers he already had lined up. When Blue Steel received the firearms, they stated that they did not order the firearms and called Jimenez. Jimenez explained that they spoke with an employee at the store and she confirmed that Samuels could have firearms shipped to the store. Blue Steel advised Jimenez that Samuels was not a partner of theirs and they returned the firearms to Jimenez.

10

24.     On June 18, 2018, I contacted an employee with Jimenez Arms via phone, (877) 750-2734. The employee advised me that Samuels originally called her on November 22, 2013, stating that he purchased Jimenez pistols at a gun show and wished to purchase directly thru the company. Samuels told the employee that he was a firefighter and worked part time with the FFL Conceal & Carry. The employee stated that she contacted an employee with Conceal & Carry. The employee with Conceal & Carry advised the Jimenez Arms employee that Samuels could order firearms and have them shipped to the Conceal & Carry address. On November 22, 2013, Samuels ordered six (6) Jimenez pistols that were shipped to Conceal & Carry, 12004 East 47th Street, Kansas City, Missouri. Those pistols consisted of three (3) J.A. NINE pistols, Serial Numbrs 274311, 284356 and 282672; two (2) JA LC380 pistols, Serial Numbers 264655 and 264092; and one JA T-380 pistol, Serial Number 1525752. Samuels paid $706.00 for the firearms with a credit card ending in 6594.

25.     On December 12, 2013, Samuels ordered seven (7) Jimenez pistols that were shipped to Conceal & Carry, 12004 East 47th Street, Kansas City, Missouri. Those pistols consisted of six (6) J.A. NINE pistols, Serial Numbers 274331, 274568, 274569, 274570, 283224 and 274799, and one (1) JA LC380 pistol, Serial Number 264659. On this order, Samuels also purchased one (1) JA LC380 magazine, three (3) J.A. NINE magazines, a JA XXXL grey T-shirt and a JA medium grey t-shirt. Samuels paid $934.00 for the firearms, magazines and T-shirts with a credit card ending in 6594. On December 23, 2013, Samuels ordered three (3) Jimenez pistols that were shipped to Conceal & Carry, 12004 East 47th Street, Kansas City, Missouri. Those pistols consisted of three (3) J.A. NINE pistols, Serial Numbers 274818, 274921 and 274922. Samuels paid $390.00 for the firearms with a credit card ending in 6594. The J.A. NINE bearing Serial Number 274922, was transferred to Party #1 on February 13, 2014, at Conceal & Carry.

The firearm was recovered from Party #1 during service of an ex-parte order, wherein the petitioner stated that Party #1 threatened to kill her over the phone (KCPD Case Number 15-25274).

26.     On December 31, 2014, Samuels ordered eight (8) Jimenez pistols which were shipped to Conceal & Carry, 2201 East 38th Street, Kansas City, Missouri. Jimenez was advised that Conceal & Carry changed their address to 2201 East 38th Street, when in fact that address is Samuels' home address. Those pistols consisted of four (4) JA380 pistols, Serial Numbers 317510, 317511, 316910 and 316911, and four (4) J.A. NINE pistols, Serial Numbers 326264, 326265, 326266, and 32667. Samuels paid $840.00 for the firearms with a credit card ending in 7744.

27.     Conceal & Carry was inspected by ATF IOI Runser on December 8, 2014, and found to have eleven (11) violations ranging from conducting business away from licensed premises to numerous records violations. It was discovered that Conceal & Carry stopped keeping records in their acquisition and disposition books on December 15, 2014. IOIS Boggs conducted a records check of Conceal & Carry FFL and the only listed responsible parties on the license were the two (2) Conceal & Carry co-owners.

28.     On January 28, 2015, Samuels ordered three (3) Jimenez pistols which were shipped to Conceal & Carry, 2201 East 38th Street, Kansas City, Missouri. Those pistols consisted of three (3) J.A. NINE pistols, Serial Numbers 326928, 326846, and 326847. Samuels paid $370.00 for the firearms with a credit card ending in 7744.

29.     On April 28, 2015, Samuels called an employee with Jimenez and explained that a co-owner of Conceal & Carry lost his leg to diabetes and had closed the shop. Samuels told Jimenez that he was now ordering through Blue Steel and requested Jimenez to contact Blue Steel to obtain new FFL information. The employee with Jimenez contacted Blue Steel who provided the FFL information and stated that Samuels could have firearms shipped to the store and that

Samuels already had buyers for the firearms. On April 28, 2015, Samuels ordered five (5) JA 380 pistols and had them shipped to Blue Steel, 8832 East 350 Highway Raytown, Missouri. Samuels paid $450.00 for the firearms with a credit card ending in 7744. When the firearms arrived at Blue Steel on April 30, 2015, another employee for Blue Steel called Jimenez. That employee was unhappy with having firearms shipped to Blue Steel. That Blue Steel employee explained to Jimenez that Samuels was not partnered with Blue Steel. Blue Steel returned the five (5) firearms to Jimenez. The Blue Steel employee told Jimenez that Samuels was not authorized to order firearms through them.

30.     On May 1, 2015, an employee with Jimenez contacted Samuels via phone. Samuels apologized for the misunderstanding and stated that Blue Steel originally agreed to have the firearms shipped to them. The employee with Jimenez questioned Samuels about how he was conducting business and that he was not to be straw purchasing. In reply, Samuels explained that he would order the firearms and have them shipped to the dealer. Samuels would then take customers into the FFL and have the third parties buy the firearm "legitimately." On May 8, 2015, Jimenez received the returned firearms. On May 12, 2015, the Jimenez employee called Samuels and reimbursed the money to the credit card ending in 7744.

31.     On June 20, 2018, TFO Sola and I interviewed ATF Confidential Informant (CI) #26823. ATF CI #26823 explained that he/she knew Samuels. ATF CI #26823 knew Samuels was a firefighter. According to ATF CI #26823, Samuels had been selling firearms on the side for many years and would get a customer whatever type of firearm he/she wanted. Samuels was known to have many firearms new in the box at his residence. Samuels was also known to sell firearms to felons as long as the felon customer had a non-felon, straw purchaser, to transfer the firearm to on an ATF Form 4473 at a FFL. Samuels will take the non-prohibited person and the

firearm to a FFL and transfer the firearm to the non-prohibited person fully knowing that the firearm is for a prohibited person. ATF CI #26823 is a known felon and known to be a felon by Samuels. Samuels has transferred firearms to a non-prohibited person knowing they are going to the felon CI approximately nine (9) times. ATF CI #26823 stated that Samuels offered to sell a 12-gauge shotgun straight to him/her without going through a FFL.

32.     ATF CI #26823 knows that Samuels had sold firearms to at least five (5) individuals. Samuels typically sold the small Jimenez model pistols for $225.00 to $250.00 and the larger models for $250.00 to $500.00. ATF CI #26823 knows that Samuels purchases the majority of the firearms online. ATF CI #26823 knew that Samuels had a Taurus Judge revolver for sale as well.

33.     On June 28, 2018, ATF CI #26823 made a recorded phone call to Samuels, (816) 718-2552. During the call, Samuels agreed to sell ATF CI #26823 a 12-gauge shotgun. ATF CI #26823 was previously known to Samuels as a convicted felon, thus prohibited from possessing a firearm. On June 29, 2018, ATF CI #26823 made a recorded phone call to Samuels, 816-718-2552, and confirmed they were meeting at Samuels' residence, 2201 East 38th Street, Kansas City, Missouri. The meeting was captured on an audio recording. When ATF CI #26823 arrived at Samuels' residence, Samuels walked ATF CI #26823 into his residence and showed him/her the shotgun. The ATF CI #26823 and Samuels talked about the shotgun and how to remove the plug to allow extra shells into the tube. The ATF CI #26823 asked Samuels what else he could sell him/her. Samuels responded, "What ... This is all I got that you can do without the thing." The ATF CI #26823 asked Samuels what the ticket was. Samuels asked ATF CI #26823 what he told him/her previously with a brand new box of shells. Samuels then asked ATF CI #26823 if he/she was going to get something else later. Samuels asked, "Are you going to do a legit one?" ATF

CI #26823 said, "Yes." When Samuels was asking about a "legit" firearm he was talking about having ATF CI #26823 buy a firearm from him and having the firearm transferred to a straw purchaser on an ATF Form 4473.

34.    Samuels and ATF CI #26823 talked about the plug again and how to take it out. Samuels told ATF CI #26823 where it was and that it was a hunting thing. Samuels told ATF CI #26823 the plug was for hunting. ATF CI #26823 replied, "I'm going hunting. I'm going hunting." When ATF CI #26823 talked about hunting, he/she was referring to shooting people.

35.    ATF CI #26823 asked Samuels about tasers. Samuels asked ATF CI #26823 how many he/she wanted. ATF CI #26823 responded with five (5) or six (6). Samuels stated, "I got you." Samuels told ATF CI #26823 that he was going to grab some tasers. Samuels asked the CI, "You don't want nothing else yet? Well, she'd have to do them." ATF CI #26823 stated, "She'd have to do that. You know I'm a felon." Samuels responded, "I know. Are you going to do something on them or no? You want me to show you that .22? You are going to lose your mind. Just sit right there." Samuels and ATF CI #26823 were talking about buying one or more of the firearms Samuels had in a bag that was full of approximately eight (8) Jimenez firearms new in the box, a Taurus Judge, and a .38 caliber revolver. When Samuels stated, "She would have to do them" he was talking about having a straw purchaser buy them on ATF Form 4473 for ATF CI #26823.

36.    Samuels told ATF CI #26823 that the box of shotgun shells are eight (8) shot. Samuels and ATF CI #26823 discussed what the shot and weight of the shot in the shells consist of. During the conversation Samuels said, "It's like popping a motherfucker with a nine, eight times." ATF CI #26823 asked Samuels for something to wrap the shotgun in before walking out the door.

15

37.     Samuels exited the room and returned with an AR style .22 caliber rifle to show ATF CI #26823. Samuels stated that the one he was showing ATF CI #26823 was Samuels' but indicated that he had one just like it for sale. ATF CI #26823 asked how much the rifle would cost. Samuels stated, "I at least got to get four ($400.00). They nice. You ain't gonna buy these. They look ... What that look like? It look like an AR. But you got to do the ... these you do the thing."

38.     Samuels and ATF CI #26823 wrapped the shotgun in a long cardboard box. The box had a label on it addressed to Samuels' wife at 2201 East 38th Street, Kansas City, Missouri. Samuels asked ATF CI #26823 if he/she was going to put it in the trunk of his/her car. ATF CI #26823 said he/she was going to put it in the back seat. ATF CI #26823 stated, "I'm fittin to lock and load. I ain't playing with these dudes." Samuels told ATF CI #26823 to put the shotgun in the trunk. Samuels stated, "I'm just saying it's too big. Well, I know you ready to go fuck with it, so." At approximately 1116 hours, ATF SA Tyree Kroener observed ATF CI #26823 exit Samuels' residence with the shotgun wrapped in a box and put in the ATF CI #26823 vehicle. ATF CI #26823 told Samuels he/she owes Samuels for this. Samuels replied, "Please don't get in no trouble." Samuels told ATF CI #26823 to make sure the shotgun was covered up. Samuels asked ATF CI #26823 if he/she was going to "chop down" the shotgun. Samuels told ATF CI #26823 to take the screws out of the stock, and cut the stock down to where he/she wanted it. Samuels then told ATF CI #26823 to move the box of shotgun shells and to conceal them.

39.     ATF CI #26823 left Samuels' residence at approximately 1124 hours. TFO Sola and I met ATF CI #26823 at a predetermined location. ATF CI #26823 and ATF CI #26823's vehicle was searched with no other evidence located other than the purchased shotgun and box of shotgun shells. ATF CI #26823 stated that Samuels charged him/her $350.00 for the shotgun and

ammunition. The shotgun was a Winchester Model 12, 12-gauge shotgun bearing Serial Number 1900308. The shotgun shells were a box of twenty-five (25) Federal 2 ¾ inches, 12-gauge eight (8) shot. All evidence was photographed and secured in the ATF vault.

40.    On July 16, 2018, TFO Sola and I contacted ATF CI #26823 at a predetermined location. At approximately 1310 hours, ATF CI #26823 made a recorded phone call to Samuels, (816) 718-2552, to arrange a firearm purchase at Samuels' residence, 2201 East 38th Street, Kansas City, Missouri, for July 19, 2018. ATF CI #26823 advised Samuels during the recorded phone call that ATF CI #26823 had two buddies that wanted to purchase firearms. ATF CI #26823 told Samuels that one of his/her buddies was a felon but the felon's cousin would get both of the firearms for him/her. When ATF CI #26823 said the cousin would get the firearms, ATF CI #26823 was referring to the cousin completing the ATF Form 4473 for the felon. Samuels stated, "He got to get one at a time though." ATF CI #26823 told Samuels that ATF CI #26823 told his/her buddies they could do one every other week. Samuels responded, "Yeah, one. You can get one every week. You just got to space it out because you don't want the red flag."

41.    ATF CI #26823 asked Samuels if he had any more of the nines, referring to a Jimenez J.A. NINE pistol. Samuels said, "Yeah it chrome though." ATF CI #26823 stated, "It don't matter man. We fittin' to do the. You know." Samuels stated, "I got it." Samuels agreed to meet and complete the deal in the next few days. Samuels advised ATF CI #26823 that he would find out what time the FFL was open. ATF CI #26823 asked Samuels what the ticket was. Samuels stated, "I'll do 'em for $250.00. I really need $260.00 cause they chrome." ATF CI #26823 asked if Samuels was going to give a box of shells with the pistol. Samuels said, "Oh. Yeah. Uh. Shells is $20.00." ATF CI #26823 who is known to Samuels as a felon told Samuels that he/she needed ammunition also. ATF CI #26823 told Samuels that he/she needed a box of

.22 caliber ammunition and a box of 12-gauge shells. Samuels stated, "I got the 12's. I got both. I got them all." Later that day Samuels contacted ATF CI #26823 via phone and told him/her that he wanted to sell the Jimenez J.A. NINE for $300.00 instead of $260.00. ATF CI #26823 told Samuels that ATF CI's #26823 buddy was set on $260.00 so Samuels needed to meet them in the middle at $280.00. Samuels agreed to sell the pistol for $280.00. The negotiation of the price was not audio recorded. On July 17, 2018, ATF CI #26823 contacted Samuels who advised to meet at his residence on July 19, 2018, around 1100 hours.

42.     On July 19, 2018, TFO Sola and I contacted ATF CI #26823, ATF CI #1331 and ATF Undercover Special Agent #1 (UC #1) at a predetermined location. ATF CI #26823 and ATF CI #1331 were searched with nothing illegal located. ATF CI #26823 made a recorded phone call to Samuels, (816) 718-2552, telling him that he/she had the money and was on the way. I provided ATF CI #26823 with $40.00 of investigative funds to purchase the two boxes of ammunition. I provided ATF CI #26823 with an audio recorder. I provided ATF CI #1331 with $600.00 of investigative funds to purchase a firearm and ammunition. ATF CI #1331 was equipped with an audio recorder, which recorded the firearm purchase. ATF UC #1 was equipped with an audio/video recorder, which captured the firearm purchase.

43.     At approximately 1052 hours, TFO Anchondo observed the ATF UC #1 and ATF CIs arrive at the residence. At approximately 1101 hours, TFO Anchondo observed a female, later identified as Samuels' wife, approach the door and advise the ATF UC #1 and CIs that Samuels would be out shortly. At approximately 1101 hours, ATF UC #1 and CIs contacted Samuels in front of the residence and walked into the enclosed porch area of the residence. Once in the residence, Samuels immediately provided CI #1331 with a box containing a Jimenez Arms, Model J.A. NINE, 9mm handgun, Serial Number 355076, and two firearms magazines. Samuels stated

the firearm was brand new and asked, "We just gotta do who?" referring to which party would complete the required paperwork. ATF UC #1 stated that he/she would complete the paperwork for the transfer of the firearm. Samuels stated that they would have to travel "up north" in order to complete the transfer.

44.     Samuels then retrieved a homemade bill-of-sale and stated, "This is what I do. This is just a paper to cover me. Put your name here, sign, and date." Samuels handed it to ATF CI #1331 and stated, "We'll just do this paperwork. This covers me. So you can fill this out real quick." ATF CI #1331 stated that ATF UC #1 should complete the paperwork instead of him/her. Samuels responded, "You can do it. As long as (ATF UC #1) is gonna do it (complete the ATF Form 4473). I know what you're doing." Samuels was acknowledging that he was aware ATF UC #1 was conducting a "straw purchase" for ATF CI #1331. ATF CI #1331 stated, "I'm a felon, man." Samuels then stated, "Ya. This is our thing. (ATF UC #1) gonna do the background for you. I already know that. That's cool."

45.     ATF CI #1331 then began to fill out the bill-of-sale. ATF CI #26823 then purchased one box of 12-guage shotgun shells, and one box of .22 caliber ammunition from Samuels. Samuels asked ATF CI #1331 if he/she wanted ammunition for the handgun being purchased. ATF CI #1331 responded in the affirmative. Samuels provided additional instruction to ATF CI #1331 on how to complete the bill-of-sale. ATF CI #1331 stated to Samuels, "I got hit last weekend. These motherfuckers robbed me and shit so. I'm trying to get some other some other shit too." Samuels stated, "Ok." ATF CI #1331 stated, "You know cause sometimes my cousin don't be with me and that's when they caught me sleeping." Samuels responded, "Ya, it happens." ATF CI #1331 then stated, "Ya, they took me hard man. I'm trying to make sure they don't do it again." Samuels responded that he understood.

46.     ATF UC #1 asked Samuels how they would complete the paperwork for the transfer of the firearm. Samuels stated, "We're gonna do it and it's gonna come right ... You pass and it's gonna come right to you. Tell (ATF CI #26823 NAME REDACTED). Twenty minutes." Samuels was referring to the fact he has assisted individuals with conducting straw purchases in the past and was familiar with the process of NICS background checks. Samuels then stated, "All (ATF UC #1's) doing is just the transfer from me to (ATF UC #1). See, our deal is done. All (ATF UC #1) does is the paperwork and (ATF UC #1 will) fill out the paperwork and we'll take that gun in there (to FFL), and they'll transfer it to (ATF UC #1). And when we walk out, (ATF UC #1) can give it to you. That's done. You see what I'm saying? So that's how I do it. But at least you'll have something that's clean. Ain't nothing on that one. Guaranteed."

47.     ATF CI #1331 provided Samuels with $280.00 in ATF Agent Cashier funds for the firearm. Samuels requested an additional $10.00 for a box of ammunition. ATF CI #1331 agreed and provided him with an additional $10.00. At approximately 1105 hours, I was advised by the ATF UC #1 that Samuels was armed with a firearm. ATF UC #1 exited the residence for a short period of time. While ATF UC #1 was outside, ATF CI # 1331 asked Samuels if he could sell him/her more firearms. Samuels responded, "In a week. Well for him (referring to ATF UC #1), but if you get somebody else as long as they good ... What you can do is one a week. You can't do more than one a week. Because it throws a flag. Like even if I ... I ... I've done bought all kinds of stuff, but if I buy two he still makes me wait a week, but it throws a red flag. Like, why you want two right now? What you getting ready to do?" ATF CI #1331 asked Samuels if he could get a Draco, referring to an AK-47 type pistol. Samuels said, "Uh. I can check." Samuels then instructed all parties to follow him to the FFL for purposes of transferring the firearm.

48.     At approximately 1111 hours, TFO Anchondo observed ATF UC #1 and ATF CIs in the undercover vehicle and Samuels in a gold Ford Explorer Sport with a white camper shell, bearing Missouri tag 1AW824, leave eastbound on East 38th Street. ATF UC #1 followed Samuels to Mission Ready Gunworks located at 1924 Linn Street, North Kansas City, Missouri. Samuels, ATF UC #1, ATF CI #1331, and ATF CI #26823 entered the FFL. ATF UC #1 completed an ATF Form 4473 and subsequently passed the NICS background check. Samuels provided the clerk with $20.00 for the transfer of the firearm. ATF UC #1 picked up the firearm from the counter and all parties exited the FFL and walked to the parking lot.

49.     Samuels stated, "See how easy that is?" Samuels informed the ATF CI #1331 that he could obtain whatever firearms that ATF CI #1331 wanted. ATF CI #1331 and Samuels then exchanged phone numbers. Samuels told ATF CI #1331 that he had more Jimenez pistols, a .38 special revolver, and a Taurus Judge for sale. Samuels explained that the Judge fires .410 shotgun shells and .45 colt ammunition. Samuels stated, "Think about this. If I hit you with the shell, the buckshots hit you, you just fucked up, and then if I come back and I hit you with that .45 it's going to put a fucking hole like that. And that's how you stagger them because ..." ATF UC #1 asked Samuels how much the Judge would cost. Samuels responded, "About six, but it's brand. Everything I got is brand new in the box. I don't mess with nothing that ain't." ATF UC #1 asked Samuels if the Jimenez pistol he/she did the paperwork on was in his/her name. ATF CI #1 331 said no it is mine. ATF UC #1 asked if he/she needed to report it stolen. Samuels stated, "Do whatever. It don't matter." ATF CI #1331 told Samuels that he/she can't buy guns. Samuels stated, "I know. But that's what I told somebody. Said, if you find somebody to get `em than I have no problem. Like I said, you see how fast it takes. No time. And like I said, if you clean then boom they going to let it pass."

50.     At approximately 1132 hours, ATF Group Supervisor (GS) Matthew Brown observed Samuels and ATF CI #1331 walk back into Mission Ready Gunworks. ATF CI #1331 asked Samuels and an employee at Mission Ready Gunworks how much the AR type rifle with a suppressor would cost. The employee advised them that the firearm was a personally owned firearm and not for sale, but if they were to buy parts and build one it would cost around $3,000.00. While Samuels and ATF CI #1331 were walking back to the vehicles, Samuels told the CI that he/she could buy an AR without the suppressor a lot cheaper than that. Samuels explained to ATF CI #1331 that to get the suppressor one would have to apply and wait approximately a year and a half to be approved. Samuels said that he did not have one because of the long process. Samuels talked about how they were hard to find on the street but if someone had one they could sell it. ATF CI #1331 told Samuels that he/she would talk to him next week.

51.     At approximately 1134 hours, Samuels left the parking lot. Surveillance was conducted on Samuels after departing Mission Ready Gunworks. At approximately 1143 hours, ATF SA Elizabeth Gentry observed Samuels in gold Ford Explorer parked back at his residence. At approximately 1149 hours, SA Gentry observed Samuels enter a white door on the east side of the residence. Samuels did not make any stops on the way back to his residence.

52.     TFO Sola and I met with ATF UC #1, ATF CI #26823 and ATF CI #1331 at a predetermined location. ATF UC #1 provided me with the recording devices from both CIs, the purchased firearm, the box of 9mm ammunition and the bill of sale. ATF CI #26823 provided me with a box of .22 caliber ammunition and a box of Federal 12-gauge ammunition. Both ATF CIs were searched with nothing located. The firearm ATF CI #1331 purchased from Samuels was a Jimenez , Model J.A. NINE, 9mm pistol bearing Serial Number 355076, with two magazines new in the box. It is known that Samuels purchased the firearm on December 20, 2015, from ECAP

Enterprises, LLC, at the R.K. Shows Inc. Gun Show in Kansas City, Missouri. ATF CI #1331 also purchased a box of 50 rounds of Monarch 9mm luger ammunition from Samuels. The bill of sale Samuels had ATF CI #1331 complete was one sheet of paper with two copies on the paper. The bill of sale was ripped in half, half of it was provided to ATF CI # 1331 and the other half Samuels kept. The bill of sale was completed by ATF CI #1331 and signed/dated by Samuels. ATF CI #26823 purchased a box of 50 rounds of Aguila .22 long rifle ammunition and a box of 25 shells of Federal 2 ¾-inch 8 shot shotgun shells. All evidence was photographed and secured in the ATF vault.

53.     On July 27, 2018, ATF CI #1331 made a recorded phone call to Samuels, (816) 718-2552, to arrange a firearm purchase. During the recorded phone call, ATF CI #1331 asked Samuels if he had gotten a Draco AK-47 type pistol. Samuels stated that they got them but they were asking like $750.00. Samuels told ATF CI #1331 that he would have to get money down on the Draco before he would buy one for the CI. Samuels explained that he would have to order the Draco online and have it shipped to "old boy," referring to Mission Ready Gunworks. Samuels explained that he would have to get the firearm from Mission Ready Gunworks, wait a week and then get it to ATF CI #1331. ATF CI #1331 asked Samuels if he had any AR type rifles or pistols for sale. Samuels stated, "Uh not nothing for real. I got a little .22. That's about it. It's a little Mossberg AR .22. It shoot 25. It looks like an AR but it ain't no real. . . You know what I mean. It ain't no real power to it. It's just a little .22. (inaudible) but if you want to do some damage. AR's are running right at, it just depends what, you know what I mean, if you want a name brand, you know, or an off brand." ATF CI #1331 asked Samuels what ARs cost. Samuels stated, "$325.00 and 7 (meaning $700.00) and they all have a 30, you know, 30 clip and all that." ATF CI #1331 asked Samuels when he/she could get an AR. Samuels told ATF CI #1331 to just let

23

him know. ATF CI #1331 told Samuels that he/she was ready as soon as he could get one. Samuels told ATF CI #1331 that he would let ATF CI #1331 know. On July 28, 2018, ATF CI #1331 contacted me and advised that Samuels texted ATF CI #1331 inquiring about which firearms to buy for him/her. Samuels asked ATF CI #1331 if the CI wanted a rifle and/or a pistol. I advised ATF CI #1331 to order only the pistol. ATF CI #1331 and Samuels' voice calls were not recorded.

54.     On August 6, 2018, an employee of Mission Ready Gunworks sent me a screen shot of an email he received on July 28, 2018, which showed the firearms Samuels had ordered which needed to be shipped to an FFL. The employee stated that he had not received any tracking information at that time. On August 15, 2018, the employee notified me that Samuels had called him and advised that he had firearms arriving at Mission Ready Gunworks that day or the next. Later that day, August 15, 2018, the Mission Ready Gunworks employee sent me a picture of four firearm boxes, indicating that Samuels had four firearms arrive at the FFL. The four firearms consisted of the following: two (2) American Tactical Imports (ATI) AR-15 Omni Hybrid rifles chambered in 5.56 mm/.223 caliber, bearing Serial Numbers NS173712 and NS179118; and two (2) ATI AR-15 Omni Hybrid pistols chambered in 5.65 mm/.223 caliber, bearing Serial Numbers NS180358 and NS180247. At approximately 1452 hours on August 15, 2018, the employee sent me photographs of the ATF Form 4473 completed by Samuels to have all four firearms transferred to him. On August 16, 2018, the Mission Ready Gunworks employee sent me a photograph of the ATF Form 3310 Multiple Sale form recording Samuels' purchase.

55.     On August 17, 2018, I was contacted by ATF CI #1331 who stated that Samuels contacted him/her and advised that he got the firearms and would be able to sell one of the rifles on August 21, 2018. ATF CI #1331 and an ATF Undercover Special Agent #2 (ATF UC #2) were scheduled to purchase a firearm from Samuels on August 21, 2018, but the deal did not happen.

On August 31, 2018, at the direction of me, ATF CI #1331 contacted Samuels in regards to purchasing the AR-15 rifle. Samuels agreed to sell the rifle to ATF CI #1331, who was previously identified to Samuels as a felon, on September 5, 2018. On September 1, 2018, I was contacted by ATF CI #1331, who explained that Samuels advised him/her that he could meet and sell the firearm to the CI on September 5, 2018. On September 5, 2018, I received subpoena records from US Bank regarding Samuels bank records. The bank records revealed that Samuels' account was charged $856.91 from Classic Firearms on July 28, 2018, and $725.36 from Classic Firearms on August 10, 2018, which is consistent with the email the Mission Ready Gunworks employee received in reference to receiving firearms for Samuels.

56.     On September 5, 2018, TFO Sola and I contacted ATF CI #1331 and ATF UC #2 at a predetermined location. ATF CI #1331 was searched with nothing illegal located. At approximately 1036 hours, ATF CI #1331 made a recorded phone call to Samuels, (816) 718-2552. Samuels told ATF CI #1331 that he had his wife's car and was approximately thirty (30) minutes from home. ATF CI #1331 told Samuels that he/she would meet Samuels at his residence in approximately thirty (30) minutes. I provided ATF CI #1331 with $900.00 of investigative funds to purchase firearms and ammunition. I equipped ATF CI #1331 with an audio/video recorder, which captured the firearms purchase. ATF UC #2 was equipped with an audio recorder/transmitter, which captured the firearm purchase.

57.     At approximately 1059 hours, TFO Anchondo stated that he observed a maroon SUV arrive at Samuels' address, 2201 East 38th Street, Kansas City, Missouri. At approximately 1059 hours, ATF UC #2 drove ATF CI #1331 to Samuels' residence. At approximately 1103 hours, I received a text message from the Mission Ready Gunworks employee stating that Samuels called him stating he would be in the shop for a transfer shortly. At approximately 1104 hours,

25

TFO Anchondo observed the ATF UC #2 and ATF CI #1331 arrive at Samuels' residence. At approximately 1104 hours, ATF UC #2 read off Missouri license plate MR5D6C, which returned to a 2017 Hyundai Santa Fe registered to Samuels' wife at 2201 East 38th Street, Kansas City, Missouri. At approximately 1108 hours, ATF UC #2 and ATF CI #1331 made contact with Samuels in front of the residence. Samuels then led them to the basement of the residence. As soon as Samuels, ATF UC #2 and ATF CI #1331 got into the basement, Samuels began to show ATF CI #1331 two firearms; an AR-type rifle and an AR-type pistol. Samuels showed ATF CI #1331 the rifle, which had a vertical fore grip/bipod, Pinty red dot sight, and a brass catch bag.

58.     ATF CI #1331 stated, "My man look. I. I. I'm gonna be honest with ya. I got to have one today. I need to get it man cause. Look at my head." Samuels responded, "Wow." ATF CI #1331 stated, "See my head? Uh? Motherfucker hit me, I'm getting ready, We're about to... You gonna hear it on the news. I'm getting ready to take me out about four motherfuckers. You hear me?" Samuels responded, "(inaudible) Do what you got to do." Samuels went on to show ATF CI #1331 the AR-type pistol and telling him/her that it was stripped, meaning there was no accessories on the firearm. Samuels showed ATF CI #1331 the brass catch bag on the rifle and told ATF CI #1331 that it was used to catch everything and how a lot of people don't know about them. ATF CI #1331 asked Samuels what the price was for the rifle. Samuels responded, "Everything, there's like 80 bucks worth of stuff on there." ATF CI #1331 asked what the price was on the pistol. Samuels responded, "That one ain't ready but I'm showing you the shorty, but you just hit the button. It's got the little. Nothing is on that one, but I mean I'm trying to get some other stuff for it. That one it just little. I put a little handle on it." ATF CI #1331 asked Samuels if he/she could buy more than one firearm. Samuels responded, "You can get one. Because it throws a red flag. You can do one and then you got to wait a week and do another one." ATF CI #1331

responded, "Ok, alright, let's do this one (the rifle) and some bullets man and then I'm going to work. I got to do this man, busted my head wide open." ATF CI #1331 asked Samuels if the rifle was auto. Samuels responded, "Semi." ATF CI #1331 stated, "It's enough for me to go get up in there and take four people out. Samuels responded, "It depends on what you want to do." ATF CI #1331 stated, "Well I'm getting ready to, I'm getting ready kill four people this morning. Man you see my head?" Samuels responded, "Okay." Samuels stated that the rifle was $550.00 plus $80.00 for the accessories and an additional $60.00 for four (4) boxes of ammunition and an extra magazine. ATF CI #1331 told Samuels, "I'll be back to sell it you in a minute. You probably don't want it." ATF CI #1331 and Samuels talked about price and agreed on a total of $690.00. Samuels stated, "These things (referring to the brass catch bag) work. This dude, he showed me that, and I was like who the hell makes that thing. But what it does it is…" ATF CI # 1331 interrupted Samuels by saying, "Yeah, yeah, yeah, cause I don't want to leave nothing with no prints on it." Samuels continued, "And I didn't realize that. He's like you ain't gonna believe this little thing. I was like, what the hell it do? You put it on there and I was like, oh shit they nice. So, we can put that in the box and we just got to take it down to Ol' Boy (referring to Mission Ready Gunworks)." Samuels said, "It's brand new in the box. You know I don't mess with nothing that isn't." Samuels asked ATF CI #1331 if they were going to follow him down to Mission Ready Gunworks.

59.    ATF CI #1331 paid Samuels $700.00 and Samuels began counting it. While Samuels was counting the money, ATF CI #1331 asked Samuels, "Yeah man, I'm thinking about, I'm thinking about torching these motherfuckers' house too. So, you know? I know what you do, is there any ways that I won't get caught for burning their house up?" Samuels laughed and responded, "That's up to you dog. You just got ah…" ATF CI #1331 asked how he/she should do

it. Samuels stated, "There ain't really no way." ATF CI #1331 asked, "There ain't no way to not get caught?" Samuels stated, "No. If they got cam, they gonna know how it started. They'll know how it started. You just hafta, kinda, gotta, just, it's just … I don't know. I mean I not supposed to be telling you that shit. It ain't no way really." ATF CI #1331 told Samuels, "I'm getting ready, I'm getting ready to drop these four asses. They busted my head wide-open man, to my skull man. So ain't no way to do it without them knowing that I did it." Samuels responded, "You just make sure you got, you just make sure they ain't got no cameras." ATF CI #1331 said, "Right, they ain't got no cameras. That's how I know where they at. They don't even know that I know where they at right now. So they ain't got cameras." Samuels responded, "Okay, well if they ain't got no cameras, you ain't got to worry about it. You see what I'm saying?"

60.     ATF CI #1331 asked Samuels, "So I mean what do I use? Cause just using gas gonna get me, ya'll will know its gas in there." Samuels responded, "Yeah, well it's gonna have to start some way. Fires don't just start." ATF CI #1331 asked what the best way to start the fire was. Samuels stated, "I mean you can't go in they walls and touch the wires together. You just throw something on it. You know make them little Mai Tai thing (referring to Molotov cocktail)." ATF CI #1331 told Samuels that he did not know how to make them. Samuels told ATF CI #1331, "A rag, a bottle and gas. But you got to be careful, you drop it or if it get on you…" ATF CI #1331, interrupted, "Then I'm burning up. I don't want to be burned up." Samuels said, "That's what I'm saying. You can just set it, set it down and let it go or people throw em. It's really good if they throw em" ATF CI #1331 told Samuels, "After I kill em I'm gonna put this fire on them." Samuels asked ATF UC #2 if he/she had Missouri identification then told ATF CI #1331, "Do what you do. I mean I know you got … Look, you sometime you got to take care of business. I

tell people, I say listen, sometimes people make you do stuff you don't want to do man. Do what you got to do."

61.     Samuels made sure he paired the right firearm with the right box. Samuels explained that someone had a deposit on the pistol he showed to ATF CI #1331. Samuels explained that he was waiting for red lasers to arrive to put onto the AR pistols he purchased. ATF CI #1331 continued to tell Samuels that he/she was going to kill four people the same day. Samuels still agreed to sell the firearm to ATF CI #1331.

62.     At approximately 1120 hours, TFO Anchondo observed Samuels carry a box containing a firearm to his gold Ford Explorer Sport and leave the residence. ATF CI # 1331 and ATF UC #2 followed Samuels to Mission Ready Gunworks, 1924 Linn Street, North Kansas City, Missouri. Samuels, ATF CI #1331 and ATF UC #2 arrived at Mission Ready Gunworks at approximately 1131 hours. In the parking lot, ATF CI #1331 stated to Samuels, "Man you know I appreciate you doing this for me. Shit you know boy, it's hard as hell out here on them felons man. I can't get shit unless I find somebody like you." Samuels responded, "Oh, I know." At approximately 1132 hours, GS Brown observed Samuels retrieve the box containing the firearm from his Explorer and walk into Mission Ready Gunworks. While in Mission Ready Gunworks, ATF UC #2 completed the ATF Form 4473 and passed the NICS check. Samuels paid Mission Ready Gunworks $20.00 cash for the transfer. At approximately 1143 hours, GS Brown observed Samuels, ATF CI #1331, and ATF UC #2 exit Mission Ready Gunworks. GS Brown observed Samuels hand the box containing the firearm to ATF CI #1331, a known felon, to Samuels. ATF CI #1331 asked Samuels if he/she could bring someone else later in the day to purchase the AR pistol Samuels showed them. Samuels explained to ATF CI #1331 that if he/she was to bring someone else to transfer the pistol to, ATF CI #1331 would not be able to come into Mission Ready

Gunworks. Samuels explained that he should be able to transfer more than one firearm without throwing any flags since he was not purchasing firearms.

63.     At approximately 1144 hours, GS Brown observed Samuels walk back into Mission Ready Gunworks. While inside, Samuels asked the employee if he could transfer an AR pistol to ATF UC #2 that day as well. At approximately 1145 hours, GS Brown observed ATF CI #1331 and ATF UC #2 leave the parking lot and enter the roadway as well as Samuels exit Mission Ready Gunworks. At Approximately 1147 hours, TFO Sola and I observed Samuels pull along side ATF CI #1331 and ATF UC #2 at the intersection of 16th Street and Linn Street. Samuels told ATF CI #1331 and ATF UC #2 that ATF CI #1331 could purchase the AR-type pistol they observed in his residence earlier in the day and have it transferred to ATF UC #2 since it was a pistol. At approximately 1154 hours, ATF CI #1331 called Samuels but he did not answer. ATF CI #1331 called a second time and was then able to speak with Samuels about purchasing the AR pistol. Samuels advised ATF CI #1331 the pistol with an extra 30 round magazine and two boxes of 20 rounds of ammunition would cost $650.00 and to meet at Mission Ready Gunworks. At approximately 1156 hours, SA Steven Lester observed Samuels arrive at his residence and park. Samuels did not stop anywhere prior to arriving back at his residence.

64.     At approximately 1245 hours, ATF CI #1331 received a phone call from Samuels, in which Samuels stated he was on his way to Mission Ready Gunworks. This phone call was not recorded. At approximately 1324 hours, GS Brown observed Samuels' Explorer parked at Mission Ready Gunworks. At approximately 1325 hours, ATF CI #1331 called Samuels, and Samuels confirmed that he was at Mission Ready Gunworks waiting on the CI and ATF UC #2. At approximately 1334 hours, GS Brown observed ATF CI #1331 and ATF UC #2 arrive at Mission

Ready Gunworks and contact Samuels in the parking lot. ATF CI #1331 paid Samuels $650.00 in investigative funds while in the parking lot.

65.  ATF CI #1331 told Samuels, "I'm serious about what I was talking to you about. I'm about to set this fire." Samuels responded, "Do your thing." ATF CI #1331 told Samuels that he/she did not want to get hurt setting the fire and asked Samuels if he had ever started a fire. Samuels told ATF CI #1331 that he had never started a fire and that he wouldn't do it. ATF CI #1331 asked Samuels what kind of bottle to use when making a Molotov cocktail. Samuels stated, "A regular beer bottle. Put gas in it. When it hits phew." Samuels told ATF CI #1331 that he/she could set the Molotov cocktail down, light it and get away or light it and throw it. ATF CI #1331 asked Samuels if investigators would be able to get his/her fingerprints off the bottle. Samuels responded, "Yeah, you got to cover all that shit. Don't leave no evidence. Don't leave nothing. Get you some rubber gloves. Thing with that is your fingerprint won't go through rubber." ATF CI #1331 told Samuels that he/she didn't want to get caught by them, referring to the fire department. Samuels told ATF CI #1331, "It ain't going to be us it's going to be damn police. We don't do fingerprints. We call bomb and arson. We don't do that shit. Remember? We put the shit out, we go home."

66.  At approximately 1337 hours, GS Brown observed Samuels retrieve a firearm box out of his Explorer and walk into Mission Ready Gunworks. As they were walking into the business, Samuels stated, "If you knew anybody from bomb and arson they could tell you a whole shit, a lot more than I can." Samuels stated that he did not know anyone from the bomb and arson squad. While inside Mission Ready Gunworks, ATF UC #2 completed an ATF Form 4473 and passed the NICS check. While waiting on the NICS check, Samuels showed ATF CI #1331 firearms in a firearms magazine and told him/her that he could get ATF CI #1331 any firearm

he/she wanted out of the magazine. Samuels paid Mission Ready Gunworks $20.00 for the transfer fee. ATF UC #2 carried the firearms out of Mission Ready Gunworks. At approximately 1354 hours, GS Brown observed Samuels, ATF CI #1331 and ATF UC #2 exit Mission Ready Gunworks. ATF CI #1331 took the firearm from ATF UC #2 and put into the vehicle.

67.     While in the parking lot, ATF CI #1331 asked Samuels, "Do you know somebody over there in the division you was talking about?" Samuels responded, "Not right off. I'll find somebody." ATF CI #1331 told Samuels, "Call me if you find somebody tonight. It's gonna happen today. It's getting ready to pop off." Samuels responded, "Like I said, fingerprints, anything that's trackable that's what you want … you don't want, you don't want them to track." Samuels explained to ATF CI #1331 that he had three more firearms on the way and another bag, referring to a brass catch bag. Samuels explained, "He just does all the transfers. And I deal with different people. I try to deal with what going to get me the best deal. You see what I'm saying." Samuels explained how he purchases the firearms for a certain price but then marks them up to make a profit. While walking back to his Explorer, Samuels told ATF CI #1331, "Just remember don't leave fingerprints and shit. Don't leave nothing for em."

68.     TFO Sola and I met with ATF UC #2 and ATF CI #1331 at a predetermined location. ATF UC #2 provided me with the recording devices, the purchased firearms, the boxes of .223 caliber ammunition and two (2) 30-round magazines. The first firearm ATF CI #1331 purchased from Samuels was an American Tactical Imports Omni-Hybrid AR-15 .223 caliber rifle bearing serial number NS179118, with one (1) magazine, a Pinty red dot optic, and a fore grip bi-pod, new in the box for $630.00. It is known that Samuels purchased the firearm on or before July 28, 2018, from Classic Firearms and was transferred to Samuels on an ATF Form 4473 on August 15, 2018, at Mission Ready Gunworks. ATF CI #1331 also purchased four (4) boxes of twenty

32

(20) rounds of Wolf .223 caliber ammunition and one (1) Amend2 30-round AR-15 magazine for $60.00 from Samuels. The second firearm ATF CI #1331 purchased from Samuels was an American Tactical Imports Omni-Hybrid AR-15 .223 caliber pistol bearing serial number NS180358, with two (2) boxes of twenty (20) rounds of Wolf .223 caliber ammunition and one (1) Amend2 30-round AR-15 magazine for $650.00. It is known that Samuels purchased the firearm on or before July 28, 2018, from Classic Firearms and was transferred to Samuels on an ATF Form 4473 on August 15, 2018, at Mission Ready Gunworks. All evidence was photographed and secured in the ATF vault.

69.     Based on my training and experience, I know Jimenez pistols are not a firearm that is frequently collected. Further, based on my training and experience, I know that Jimenez pistols are inexpensive and are frequently used by criminals. Additionally, since Jimenez pistols are commonly inexpensive, a profit can be made by buying them at a low cost and selling them at a marked up price to prohibited individuals. To date, it is known that of the seventy-seven (77) firearms Samuels has purchased, fifty-seven (57) of them were Jimenez pistols. Of the seventy-seven (77) firearms Samuels has purchased, forty-seven (47) of them have been transferred to third parties on ATF Form 4473. Of the forty-seven (47) firearms transferred to third parties, forty-three (43) were Jimenez pistols. The six (6) firearms involved in crimes that originated with a Samuels purchase were all Jimenez pistols. On average, from the date Samuels purchased (not acquired) the firearms to the date they were transferred to third parties on ATF Form 4473 was 189 days. There have been eleven (11) firearms in which Samuels transferred to a third party forty (40) days or less from the date of purchase. Fifteen (15) of the firearms Samuels has purchased have been transferred to him and then to a third party. Regarding those fifteen (15) firearms, the

average time between Samuels acquiring them to transferring them was two hundred-sixteen (216) days. Seven (7) of those fifteen (15) were transferred within thirty-five (35) days.

70.     Based upon the aforementioned facts, I have probable cause to believe that James Samuels is engaging in the business of dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A); knowingly selling or transferring firearms and ammunition to prohibited persons, in violation of Title 18, United States Code, Section 922(d)(1); knowingly transferring firearms to be used to commit a crime of violence, in violation of Title 18, United States Code, Section 924(h); and engaging in and conspiring to engage in unlawful straw purchases of firearms, in violation of Title 18, United States Code, Sections 371, 924(a)(1)(A), and 922(a)(6).

JEFFREY M. BROCK
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Subscribed and sworn to before me

this ___1st___ day of October, 2018.

HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri