# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Case No. 18-00309-01-CR-W-GAF |
| ) | |
| ) | |
| JAMES SAMUELS, ) | |
| ) | |
| DEFENDANT. ) | |

## JAMES SAMUELS SENTENCING MEMORANDUM

**COMES NOW** James Samuels, by and through counsel of record, John Anthony Picerno, and respectfully requests this Honorable Court to grant him a downward variance and sentence him to a term of imprisonment of 48 months. Such a sentence is just and proper based his low risk of recidivism, the parsimony principle, and the sentencing criteria at 18 U.S.C. § 3553. In support of his motion, the James Samuels respectfully states as follows:

## I. SUGGESTIONS IN SUPPORT

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." *Pepper v. United States*, 562 U.S. 476, 487-488 (2011). The term "history" as used in Section 3553 is not limited solely to a

defendant's prior criminal record, but instead encompasses the unique circumstances of Mr. Samuel's entire life. *United States v. Myers*, 439 F.3d 415, 418 (8th Cir. 2006). *United States v. Myers*, 439 F.3d 415, 418 (8th Cir. 2006).

Consistent with the Court's pronouncement in *Pepper*, the mandate of 18 U.S.C. § 3553 directs a court to impose a sentence that is "sufficient, but not greater than necessary" to satisfy the statutory goals of sentencing. This mandate, the parsimony principle, operates to set an "independent limit on the sentence a court may impose." *United States v. Jimenez-Beltre*, 440 F.3d 514, 525-26 n.8 (1st Cir. 2006) (Howard, J., concurring). *See United States v. Defoor*, 535 F.3d 763, 764 (8th Cir. 2008) (parsimony doctrine provides that sentence "should be the least severe sanction necessary to achieve the purpose of sentencing").

## II. PROCEDURAL BACKGROUND

1. On August 31, 2020, the defendant, James Samuels, pursuant to a written Plea Agreement, entered a plea of guilty to Counts 1, 2, 5, 7, 9, 12 and 13 of a 14-count Indictment:

**Count 1:** Conspiracy to Make False Statements During Purchase of Firearms, in violation of 18 U.S.C. 371 and 924 (a)(1)(A).

**Count 2:** Engaging in the Business of Dealing Firearms Without a License, in violation of 18 USC 922(a)(1)(A), 923 (a) and 924(a)(1)(D).

**Counts 3, 5, 6, 7, 9, & 12:** Sale of a Firearm and Ammunition to a Prohibited Person, in violation of 18 USC 922 (d)(1) and 924 (a)(2).

**Counts 4, 8, & 10:** Knowing Transfer of a Firearm for Use in a Crimes of Violence, in violation of 18 USC 924(h).

**Counts 11 & 13:** Possession of an Unregistered Firearm, in violation of 26 USC 5841, 5861 (d) and 5871.

**Count 14:** Possession of a Stolen Firearm, in violation of 18 USC 922 (j) and 924 (a)(2).

2. A summary of the written Plea Agreement is as follows:

a) The parties agreed that the applicable guideline for the offenses of conviction is §2K2.1(a)(4), which provides for a base offense level of **20**, and that the offenses will be grouped, pursuant to 3D1.2;

b) That a **4-level enhancement**, pursuant to §2K2.1(b)(1)(B), is applicable as the offense involved at least eight firearms;

c) That a **2-level enhancement**, pursuant to §2K2.1(b)(4), is applicable as the offense involved a stolen firearm;

d) That a **4-level enhancement**, pursuant to §2K2.1(b)(5), is applicable as the defendant engaged in the trafficking of firearms; and

e) That the defendant admitted his guilt and accepted responsibility for his actions. Consequently, he is entitled to a **3-level reduction** of his offense level, pursuant to §3E1.1.

f) The defendant agreed to pay a fine in this case in the amount of $11,282.

g) The Government agrees to dismiss Counts 4, 8, 10, 11 and 14 at the time of sentencing.

## II. TOTAL OFFENSE LEVEL

3. There is one outstanding issue regarding the PSIR. The plea agreement between the Government and Mr. Samuel's calculated the Total Offense Level at **27**. However, contrary to the plea agreement, the PSIR has added **6** points, instead of **4** points, for specific offense characteristics, based upon the number of guns involved in this offense, consequently raising Mr. Samuels TOL to **29** and his advisory Guideline Sentence to **87-108** months. **(**PSIR page 10, paragraph 37 and page 15, paragraph 71). Mr. Samuels objects to both paragraphs 37 and 71. Due to a lack of any criminal record, Mr. Samuel's falls within Criminal History Category I. Mr. Samuels maintains that his agreed upon advisory Guideline Sentence should be **70-87** months.

## III. SENENTENCE TO BE IMPOSED AND APPLICATION OF 18 U.S.C. § 3553 FACTORS

**A. The court must consider the factors enumerated at 18 U.S.C. § 3553(a) as the controlling framework for sentencing, rather than the range of punishment calculated under the sentencing guidelines.**

In *Gall v. United States*, the Court held that the advisory range constitutes only one of a variety of sentencing factors, and that reasonableness depends on consideration of the 3553 factors. 128 S. Ct. 586, 602 (2007). The Court emphasized that because the guidelines are

4

no longer mandatory, the "range of choice dictated by the facts of the case" is "significantly broadened." *Id.*

Section 3553(a) is composed of two distinct parts: the sentencing mandate of the prefatory clause and the seven enumerated factors. The "overarching provision" of 3553(a) that guides the court's evaluation of an appropriate sentence is a limiting one: the court must impose a sentence that is "sufficient, but not greater than necessary" to satisfy the statutory goals of sentencing. *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). The enumerated 3553 factors include 1) the "nature and circumstances of the offense, and the history and characteristics" of Mr. Samuels, 2) the need for the sentence to reflect the severity of the offense, deterrence, to protect the public, and to provide Mr. Samuels with educational, vocational, and correctional treatment in the most effective manner, 3) the kinds of sentences available, 4) the guideline range, 5) the policy statements, 6) the need to avoid unwarranted sentence disparity, and 7) the need to provide restitution.

### *Nature and Circumstances of the Offense*

The Offense Conduct section of this memorandum has described Mr. Samuels illegal conduct. He has pled guilty and accepted responsibility for his illegal activity.

5

### *History and Characteristics of the Defendant*

A sentence of 48 months would satisfy this sentencing mandate. It is the goal of sentencing to prevent unnecessary incarceration and to limit prison sentences to those individuals who pose the greatest risk to society. As renowned criminologist Norval Morris has consistently argued, and reflective of the recent Supreme Court decisions, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed."

Regarding the history and characteristics of the defendant, Mr. Samuels is 55 years of age and is one of 9 children. Mr. Samuels has 6 adult children from previous relationships. Mr. Samuels has been married to his wife for 12½ years. Neither he nor any family member have a criminal history, history of mental health or substance abuse issues.

Mr. Samuels is 1983 graduate of Westport H.S. and the Kansas City Fire Academy (1998). He has possessed a Missouri EMT certificate for over 20 years. He was employed full time by the Kansas City, Mo. Fire Department from April 1998 until his arrest for this offense in October 2018. He achieved the rank of Captain. He will never again be eligible to regain employment in his chosen profession.

6

**18 USC § 3553(a)(2): The Need for the Sentence Imposed –**

> *(A) To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*
>
> *(B) To Afford Adequate Deterrence to Criminal Conduct*

Both concepts set out in (A) and (B) can be achieved without imposition of a lengthy custody sentence. A review of the criminological literature reveals that to the extent that criminal sanctions do have a general deterrent effect, the certainty (how certain an offender will be deterred) of punishment has a far greater deterrent effect than the severity of the sanction. A*ny* sentence of incarceration, however short, has a significant deterrent effect. Title 18 USC § 3553(a)(2)(B)'s directive that the sentence imposed afford adequate deterrence to criminal conduct does not require a lengthy term of imprisonment. The fact that Mr. Samuels was investigated, prosecuted, lost a long-term career as a public servant, and pled guilty for his actions should be sufficient to deter potential similarly situated offenders.

> *(C) To Protect the Public from Further Crimes of the Defendant*

Mr. Samuels behavior is uncharacteristic of the way he has conducted himself personally and professionally throughout his life leading up to, and since, the instant offense. He has accepted full responsibility

for his behavior and, through his plea agreement, has demonstrated his character.

**RECIDIVISM**

Among the key findings of The U.S. Sentencing Commission's Study on Criminal History and Recidivism Among Federal Offenders[1] were that offenders with zero criminal history points had a lower rearrest rate than offenders with one criminal history point and that such offenders with no prior contact with the criminal justice system had an 11.7% point lower recidivism rate than an offender with zero criminal history points and some prior contact with the criminal justice system, such as arrests or convictions that do not receive points (25.7% compared to 37.4%).[2]

Reconviction rates for offenders with zero criminal history points is 17.4%.[3] Reincarceration rates for these offenders was 12.2%[4].

Most likely, Mr. Samuels will be in his late 50's to early 60's at his time of release. The recidivism rates for offenders at this age range from 13.1% - 5.7%.[5]

Since his incarceration in October of 2018, Mr. Samuels has been a model inmate with no disciplinary reports. His has participated in the Core

---

[1] The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders, March 2017.
[2] Id. at pg. 6.
[3] Id. at Appendix 7.
[4] Id. at Appendix 8.
[5] Id. at Appendix 6.

Civic Work Program since November 2018 and he is currently employed as the morning medical porter in the medical department. Mr. Samuels has also demonstrated his ability to continue to achieve success by attending and successfully completing numerous educational programs while in custody at Core Civic:

    1. On Ramp (Go Further).

    2. Highway (Go Further).

    3. Destination (Go Further).

    4. Go Further Reentry Program.

    5. Anger Management.

    6. Ideas for Better Communication.

    7. Building Social Networks.

    8. Volunteer Worker Program.

    9. Partners in Parenting.[6]

### (D) *To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Mr. Samuels provided decades of service to the City of Kansas City as a fireman is indicative that he has and can continue to be a productive member of society.

Mr. Samuels has no medical or mental health issues. Given his age, education, and employment history, as well as his lack of medical or untreated mental health issues, Mr. Samuels is not an obvious candidate for educational, vocational, medical or substance abuse training or other treatment.

Mr. Samuels first preference for placement would be to FPC in Leavenworth, Kansas. However, based upon his training and experience, particularly as an EMT, Mr. Samuels believes that he could be an asset to a medical facility and would like the court to consider recommending him to MCFP – Springfield, Mo. as his second preference.

**18 USC § 3553(4), (5): The Sentencing Guideline Provisions**

Mr. Samuels conviction alone serves as a general and specific deterrent. At his age, there is no credible evidence that he is a candidate for recidivism. He lost his career and at his age upon release he will have great difficulty finding well-paying and meaningful employment. He has been shamed by his conduct. In short, there are substantial reasons to grant him a sentence of 48 months. A sentence consistent with the suggestions herein would serve all the goals of punishment established by the Sentencing Reform Act.

---

[6] See Exhibit's 1-9.

## IV. CONCLUSION

A sentence of 48 months is more than sufficient to reflect offense severity, provide deterrence, and protect the public. It is also consistent with *Gall's* instruction that district courts should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall*, 128 S.Ct at 598. With respect, Mr. Samuel's history and characteristics provide substantial mitigation to the imposition of a lengthy custody sentence.

For the reasons set forth above, the defendant seeks downward departure because he has demonstrated that a long custodial sentence is not necessary to protect the public from further crimes.

**WHEREFORE**, James Samuels respectfully requests this Honorable Court to sentence him to 48 months in the Bureau of Prisons.

Respectfully submitted,

*/s/John Anthony Picerno*
John Anthony Picerno, MBN: 41861
1301 Oak Street, Suite 605
Kansas City, Missouri 64106
Telephone:  (816) 471-3330
Mobile:     (816) 694-7726
Facsimile   (816) 396-5680
Email: JPLaw@JohnPicerno.com
**ATTORNEY FOR JAMES SAMUELS**

## CERTIFICATE OF SERVICE

In accordance with Rule 49(a), (b) and (d), fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby CERTIFIED that this Entry of Appearance was electronically filed this 19th day of January 2021, and that a copy was sent to all concerned parties, through the Court's Electronic Case Filing System.

*/s/John Anthony Picerno*
John Anthony Picerno